UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Southern Division

CASE NO.:CV-08-B-0761-S

_____

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

  v.

LARRY P. LANGFORD,
WILLIAM B. BLOUNT,
BLOUNT PARRISH & CO., INC, AND
ALBERT W. LAPIERRE,

        Defendants.
_____

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
<u>AGAINST DEFENDANT LARRY P. LANGFORD</u>**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Securities and Exchange Commission files this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment against Defendant Larry P. Langford.

### I. Procedural History

1.    The Commission filed this action against Langford and three other defendants on April 30, 2008. Complaint, D.E. 1, attached as Exhibit 1. The

complaint alleges Langford, among other things, committed securities fraud by accepting undisclosed payments and benefits in 2003 and 2004 from Montgomery-based broker-dealer Blount Parrish & Co. and its principal, William Blount, while Langford was president of the Jefferson County, Alabama Commission. Complaint, Ex. 1, at ¶¶1-5.

2. The undisclosed payments occurred in connection with Langford and the County awarding billions of dollars of County bond underwriting and swap agreement business to Blount and Blount Parrish. *Id.*

3. Langford and the other defendants in the case moved to dismiss the Commission's complaint on a number of grounds. D.E. 12, 16, 17.

4. Before the Court ruled on the motions and before Langford and the other defendants answered, the United States Attorney's Office for the Northern District of Alabama secured an indictment against Langford and others for the same conduct which gave rise to this action. Superseding Indictment in Case No. 08-cr-00245, attached as Exhibit 2. The superseding indictment charged Langford with bribery, money laundering, mail fraud, wire fraud, conspiracy to commit fraud, and filing false tax returns. *Id.*

5. Following the indictment, Langford and the other defendants moved to stay this action pending the outcome of the criminal case. D.E. 38, 40, 41. The Court granted the motions and stayed the case on January 22, 2009. D.E. 43.

6. On October 28, 2009, following an eight-day trial, a jury in Tuscaloosa, Alabama found Langford guilty of all sixty counts with which the superseding indictment charged him. Jury Verdict, D.E. 173 in Case No. 08-cr-00245, attached as Exhibit 3.

7. As a result of the verdict, the judge in the criminal case sentenced Langford to 15 years in prison, and ordered him to forfeit $241,843.65 to the government and pay restitution of $119,985 to the Internal Revenue Service. Judgment in a Criminal Case, D.E. 227 in Case No. 08-cr-00245, attached as Exhibit 4.

8. On April 26, 2010, the Commission moved to lift the stay against Langford. D.E. 49 in this case. That motion remains pending.

## II. The Allegations Of The Commission's Complaint

9. The complaint alleges causes of action against Langford for violating Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Exchange Act Rule 10b-5. Complaint, Ex. 1, at ¶5 and Counts I-III.

10. In summary, all of the causes of action stem from Langford, while president of the Jefferson County Commission, accepting $156,000 worth of undisclosed payments and benefits from Blount and Blount Parrish in connection with awarding business to Blount Parrish in five County bond offerings and four

swap agreements from March 2003 through December 2004. Complaint, Ex. 1, at ¶¶2-3. Blount and Blount Parrish reaped more than $6.7 million in fees as a result. *Id.*

11. The five bond offerings were: (1) a $94 million capital improvement bond offering that closed on March 1, 2003 ("2003-A bonds"); (2) a $1.1 billion sewer bond offering that closed on May 1, 2003 ("2003-B bonds"); (3) a $1.05 billion sewer bond offering that closed on August 7, 2003 ("2003-C bonds"); (4) a $51 million general obligation bond offering that closed on August 1, 2004 ("2004-A bonds"); and (5) a $650 million limited obligation school bond offering that closed on December 20, 2004 ("2004 school bonds"). Complaint, Ex. 1, at ¶11.

12. The four County swap agreements were: (1) a $1.1 billion swap agreement with JP Morgan Chase Bank ("JP Morgan") executed in connection with the 2003-B bonds ("2003-B swap"); (2) a $789 million swap agreement with JP Morgan executed in connection with the 2003-C bonds ("2003-C swap"); (3) a $111 million swap agreement with JP Morgan with an effective date of May 1, 2004 ("May 2004 swap"); and (4) a $1.5 billion swap agreement with Bear Stearns & Co. with an effective date of June 24, 2004 ("Bear Stearns swap"). Complaint, Ex. 1, at ¶12.

13. The complaint alleges that in July 2002, shortly after Langford won his primary election for County commissioner, Blount helped Langford obtain a

$50,000 unsecured loan from Colonial Bank to help with personal financial difficulties Langford was having. Complaint, Ex. 1, at ¶¶28-31.

14.     The bank approved the loan to Langford, even though his loan file showed he had considerable debt and a poor credit score. Complaint, Ex. 1, at ¶30. Blount persuaded his then-girlfriend, the chief credit officer for Colonial Bank's parent corporation and a member or chairwoman of all of the bank's loan committees, to approve the loan, even though it was not her normal practice to approve loans of this size. *Id.* at ¶¶30-31.

15.     When Langford's Colonial Bank loan came due in January 2003, he did not make any of the required principal or interest payments. Complaint, Ex. 1, at ¶32. Instead, the complaint alleges, he asked a mutual friend of his and Blount's, Albert LaPierre, to pay off the entire $50,000 plus interest. *Id.*

16.     The complaint goes on to allege that, with Langford's knowledge, Blount arranged for LaPierre to obtain a $50,000 loan from Colonial Bank, with the proceeds going to pay off Langford's loan. Complaint, Ex. 1, at ¶¶32-35. At Blount's request, his girlfriend also personally approved LaPierre's loan. *Id.* at ¶34.

17.     Blount later provided more than $50,000 to pay off LaPierre's loan. Complaint, Ex. 1, at ¶40. On May 28, 2003, Blount wrote a $50,000 check to LaPierre's lobbyist firm. *Id.* Two days after receiving the check, LaPierre wrote a

5

$20,000 check to Colonial Bank to pay off a portion of the loan. *Id.* at ¶41.

18.  On June 4, 2003, Blount wrote another check to LaPierre's lobbyist firm for $30,000. Complaint, Ex. 1, at ¶43. The next day, June 5, LaPierre wrote a $31,644 check to Colonial Bank to pay off the remaining principal and interest balance of his $50,000 loan. *Id.*

19.  Langford continued to have financial difficulties in the spring of 2003, which he discussed in conversations with Blount and LaPierre. Complaint, Ex. 1, at ¶37. As a result, Blount and LaPierre made efforts to get Langford another loan from Colonial Bank, this time for $75,000. *Id.* at ¶¶37-44. However, despite extensive lobbying by Blount of his girlfriend and other bank executives, the bank would not approve a new loan to Langford. *Id.*

20.  Having failed to persuade Colonial Bank to loan Langford money, Blount provided the funds himself. Complaint, Ex. 1, at ¶44. On June 12, 2003, Blount wrote a $69,000 check to LaPierre's lobbyist firm. *Id.* at ¶45. Four days later, LaPierre used Blount's money to write a $69,000 check to Langford. *Id.*

21.  Langford received an additional $6,000 in cash from Blount through LaPierre. Complaint, Ex. 1, at ¶46. Langford used the $75,000 to, among other things, pay $12,000 to a clothing store, $9,410 to a jewelry store, and $14,000 to a home entertainment store. *Id.* at ¶47.

22.  In August 2004, just weeks after Blount Parrish participated in the

6

$1.5 billion Bear Stearns swap and served as co-underwriter on the $51 million 2004-A bonds, and a month before Langford and the County selected Blount Parrish to serve as co-underwriter on the 2004 school bonds, Blount again bailed Langford out of debt. Complaint, Ex. 1, at ¶48.

23. On August 11, 2004, Blount wrote a $30,000 check to LaPierre's lobbyist firm. Complaint, Ex. 1, at ¶49. The next day, LaPierre wrote a $30,000 check to Langford. *Id.* Langford used the funds to pay $29,283 in taxes to the Internal Revenue Service. *Id.*

24. Langford made sure Blount and Blount Parrish benefited from Blount's financial assistance to him. Complaint, Ex. 1, at ¶54. Although Blount Parrish had not received any County bond business for years before 2003, early in his administration Langford met with the County's financial advisor and told him he wanted Blount involved in County financing transactions. *Id.*

25. On January 28, 2003, Langford and the other Jefferson County commissioners voted to approve a resolution authorizing the first bond offering of Langford's administration – the 2003-A bonds. Complaint, Ex. 1, at ¶59. The resolution also approved Blount Parrish as underwriter. *Id.* The transaction closed on March 1, 2003, just two weeks after Blount and LaPierre arranged to repay Langford's $50,000 loan to Colonial Bank. *Id.*

26. In its role as lead underwriter, Blount Parrish offered and sold the

2003-A bonds to investors. Complaint, Ex. 1, at ¶61.

27. In none of the actions he took or documents he signed in connection with the 2003-A bonds did Langford disclose the assistance Blount had given him in obtaining the Colonial Bank loan, or Blount and LaPierre's help in repaying the loan. Complaint, Ex. 1, at ¶60.

28. Blount Parrish received $251,685 in fees for its work as underwriter on the 2003-A bonds. Complaint, Ex. 1, at ¶63.

29. Langford also included Blount Parrish in the County's next major finance transaction, the $1.1 billion 2003-B bonds. Complaint, Ex. 1, at ¶64. Blount Parrish was a remarketing agent for a $55 million sub-series of the bonds. *Id.* at ¶65.

30. In its role as remarketing agent, Blount Parrish offered and sold the $55 million sub-series of bonds being remarketed to investors. Complaint, Ex. 1, at ¶67.

31. Blount and Blount Parrish's role was not limited to the bond offering, however. To coincide with this offering, Langford and the other County commissioners also approved a resolution authorizing the $1.1 billion 2003-B swap. Complaint, Ex. 1, at ¶68. The resolution authorized Langford, acting with the advice of the County's swap advisor, to approve the specific terms of the swap agreement and execute the transaction confirmation. *Id.*

32. Because Blount Parrish could not be a counterparty to the swap agreement under Alabama law, Langford agreed at Blount's request to select Goldman Sachs Capital Markets to share in the proceeds of this swap agreement with JP Morgan. Complaint, Ex. 1, at ¶¶69-70. Blount Parrish had a consulting agreement with Goldman Sachs. *Id.*

33. Langford signed the official statement for the 2003-B bonds on behalf of the County, and in so doing certified the accuracy and completeness of the official statement. Complaint, Ex. 1, at ¶66. Langford also signed the swap agreement on the County's behalf. *Id.* at ¶73.

34. In none of the actions he took or documents he signed on behalf of the County in connection with the 2003-B bonds, including the swap agreement, did Langford disclose the assistance Blount had provided to Langford in obtaining the Colonial Bank loan, or Blount and LaPierre's help in repaying the loan. Complaint, Ex. 1, at ¶70.

35. Blount Parrish received a fee from the County of $500,000 for its remarketing services, which was the highest fee paid to any remarketing agent on the 2003-B transaction. Complaint, Ex. 1, at ¶76. Furthermore, Goldman Sachs wired a $300,000 fee to Blount Parrish on May 27, 2003 for services to the County in connection with the swap agreement. *Id.*

36. From May through August 2003, Blount actively solicited Langford to

involve Blount Parrish in another County sewer bond offering (the 2003-C bonds) and to enter into another simultaneous swap agreement. Complaint, Ex. 1, at ¶77.

37. On June 11, 2003, Langford and Blount met to discuss the 2003-C bonds and swap agreement. Complaint, Ex. 1, at ¶78. The following day Blount wrote a $69,000 check to LaPierre's consulting firm in order for LaPierre to pay the money to Langford, which LaPierre did on June 16. *Id.*

38. Langford and the other County commissioners voted to approve a resolution on July 1, 2003 authorizing the $1 billion 2003-C bond offering, with J.P. Morgan Securities (also "JP Morgan") serving as lead underwriter. Complaint, Ex. 1, at ¶79.

39. In the same resolution, Langford and the other commissioners also authorized the 2003-C swap in connection with the bond offering. Complaint, Ex. 1, at ¶80. The County then executed the $789 million swap agreement with JP Morgan on July 14, 2003. *Id.* at ¶81.

40. For Blount Parrish's role in the 2003-C transaction, the firm received $2.6 million. Complaint, Ex. 1, at ¶84.

41. Nowhere in any of the actions he took or documents he signed on behalf of the County in connection with the 2003-C bonds and swap did Langford disclose the payments Blount had made to him through LaPierre in June 2003, or the assistance Blount and LaPierre had provided to Langford in obtaining and

repaying the Colonial Bank loan. Complaint, Ex. 1, at ¶87.

42. On the closing date of the 2003-C transaction, Langford met with Blount, LaPierre, a JP Morgan representative, the County's finance director, and the County's financial advisor. Complaint, Ex. 1, at ¶89. At this meeting, Blount asked the County to enter into another swap agreement. *Id.*

43. Again, Blount succeeded, as on November 24, 2003, the County executed the $111 million May 2004 swap agreement with JP Morgan, for which Blount Parrish received $225,000 as a consultant. Complaint, Ex. 1, at ¶¶90, 92.

44. At no time during the execution of this transaction or in documents he signed in connection with it did Langford disclose the payments Blount had made to him through LaPierre in June 2003, or the assistance Blount and LaPierre had provided to Langford in obtaining and paying off the Colonial Bank loan. Complaint, Ex. 1, at ¶92.

45. Langford next selected Blount and Blount Parrish to participate in the largest swap agreement in the history of the County, the $1.5 billion Bear Stearns swap. Complaint, Ex. 1, at ¶98.

46. Bear Stearns paid Blount Parrish $2.4 million on behalf of the County for its consultant's role on this transaction. Complaint, Ex. 1, at ¶106.

47. At no time during the execution of this transaction or in documents he signed in connection with it did Langford disclose the payments Blount had made

to him through LaPierre in June 2003, or the assistance Blount and LaPierre had provided to Langford in obtaining and paying off the Colonial Bank loan. Complaint, Ex. 1, at ¶109.

48.  On July 27, 2004, Langford and the other County commissioners voted to approve a resolution authorizing the 2004-A bonds, which closed on August 1, 2004. Complaint, Ex. 1, at ¶110. The resolution selected Blount Parrish to serve as a co-underwriter, for which the firm would receive $31,350 in fees. *Id.*

49.  In its role as co-underwriter, Blount Parrish offered and sold the 2004-A bonds to investors. Complaint, Ex. 1, at ¶112.

50.  Langford signed the official statement for the offering on behalf of the County, and in so doing certified its accuracy and completeness. Complaint, Ex. 1 at ¶111. In none of the documents he signed or actions he took in connection with the 2004-A bonds did Langford disclose the assistance Blount and LaPierre had provided in obtaining and paying off his Colonial Bank loan or the $75,000 payment Blount had made to him through LaPierre. *Id.*

51.  Just ten days after this offering closed, as discussed above, Blount wrote a $30,000 check to LaPierre's lobbyist firm. The next day, LaPierre wrote a $30,000 check directly to Langford, which Langford used to pay taxes. Complaint, Ex. 1, at ¶113.

52.  Just three weeks after that $30,000 payment, on September 7, 2004,

12

Langford and the other County commissioners voted to approve the 2004 school bonds, which closed on December 20, 2004.  Complaint, Ex. 1, at ¶114.  The resolution also approved Blount Parrish as co-underwriter, for which the firm would receive $445,000 in underwriting fees.  *Id.*

53.     Langford signed the official statement for the offering on behalf of the County, and in so doing certified its accuracy and completeness.  Complaint, Ex. 1, at ¶115.  In none of the documents he signed or actions he took in connection with the 2004 school bonds did Langford disclose the assistance Blount and LaPierre had provided in obtaining and paying off his Colonial Bank loan or any of the payments Blount had made to him through LaPierre.  *Id.*

54.     In its role as underwriter, Blount Parrish offered and sold the 2004 school bonds to investors.  Complaint, Ex. 1, at ¶116.

### III.  The Allegations Of The Superseding Indictment

55.     Count One of the Superseding Indictment charged Langford with bribery.  This count was based on Langford accepting the $69,000 check from Blount in June 2003 in return for agreeing to award Blount and Blount Parrish business in County bond offerings and swap transactions.  Superseding Indictment, Ex. 2, at 4.

56.     The jury found Langford guilty of Count One, and the Court adjudicated him guilty.  Verdict, Ex. 3, at 1; Judgment, Ex. 4, at 1.

57. Count Four of the superseding indictment charged Langford with money laundering for using $12,000 in June 2003 to pay bills at a clothing store. Superseding Indictment, Ex. 2, at 6-7.

58. The jury found Langford guilty of Count Four, and the Court adjudicated him guilty of it. Verdict, Ex. 3, at 1; Judgment, Ex. 4, at 1.

59. Count Six of the superseding indictment charged Langford with conspiracy to commit bribery, mail fraud, and wire fraud in connection with Jefferson County business. Superseding Indictment, Ex. 2, at 8-9; Judgment, Ex. 4, at 1.

60. The superseding indictment alleged part of the conspiracy involved Langford using his position at Jefferson County to award Blount and Blount Parrish work in County financial transactions in return for Blount's financial help, including money and paying off loans. Superseding Indictment, Ex. 2, at 10-11.

61. A further part of the conspiracy was that Langford, as well as the other defendants, would conceal the payments and other financial benefits. Superseding Indictment, Ex. 2, at 11.

62. Among the overt acts the indictment charged as part of the conspiracy were:

    a. Blount helping Langford obtain the $50,000 unsecured loan from Colonial Bank in July 2002. Superseding Indictment, Ex.

2, at 11.

      b.      LaPierre obtaining the $50,000 loan in February 2003 to pay off Langford's loan. *Id.* at 11.

      c.      Langford having the County select Blount Parrish as an underwriter on the 2003-A bonds. *Id.* at 11-12.

      d.      Langford having the County select Blount Parrish as a remarketing agent on the 2003-B bonds and arranging to have Blount Parrish serve as a consultant to Goldman Sachs on the 2003-B bonds and swap agreement. *Id.* at 12-13.

      e.      Blount Parrish receiving $500,000 from the County for its remarketing role on the 2003-B bonds. *Id.* at 13.

      f.      Blount providing a check to LaPierre for $50,000 on May 28, 2003, to help pay off LaPierre's Colonial bank loan. *Id.*

      g.      Blount writing another check to LaPierre for $30,000 to pay off the remainder of the LaPierre loan at Colonial Bank. *Id.*

      h.      Blount writing the $69,000 check to LaPierre on June 12, 2003, and LaPierre writing the $69,000 check to Langford on June 16, 2003. *Id.*

      i.      Langford having the County select JP Morgan as underwriter and swap counterparty on the 2003-C transaction. *Id.* at

15

14.

    j.    Blount Parrish receiving $2.6 million from JP Morgan for the 2003-C transaction. *Id.*

    k.    Langford having the County enter into the $111 million May 2004 swap agreement with JP Morgan. *Id.* at 15.

    l.    Langford's receipt of a letter from JP Morgan indicating Langford had requested the firm to pay Blount Parrish $225,000. *Id.* at 16.

    m.    Langford having Jefferson County enter into the 2004 Bear Stearns swap. *Id.* at 17.

    n.    Blount Parrish receiving $2.4 million from Bear Stearns for being a consultant in that transaction (at Langford's request to Bear Stearns). *Id.* at 18.

    o.    Langford having the County select Blount Parrish as underwriter on the 2004-A bonds. *Id.* at 19.

    p.    On August 11, 2004, Blount writing a $30,000 check to LaPierre. *Id.*

    q.    On August 12, 2004, LaPierre writing a $30,000 check to Langford with the funds Blount had given him. *Id.*

    r.    Langford taking that money two days later and paying

$29,241 in personal taxes with it. *Id.*

    s.    Blount Parrish receiving $31,350 from the County for its work on the 2004-A bonds. *Id.* at 20.

    t.    Langford having the County select Blount Parrish as underwriter on the 2004 school bonds. *Id.* at 21.

    u.    Blount Parrish receiving $445,000 from the County for its work on the 2004 school bonds. *Id.* at 22.

63.    The jury found Langford guilty of Count Six, and the Court adjudicated him guilty. Verdict, Ex. 3, at 1; Judgment; Ex. 4, at 1.

64.    Count Seven of the Superseding Indictment charged Langford with bribery for accepting the $30,000 check from Blount and LaPierre on August 12, 2004. Superseding Indictment, Ex. 2, at 26. The count also alleged the receipt of the funds was in connection with County financial transactions. *Id.*

65.    The jury found Langford guilty of Count Seven, and the Court adjudicated him guilty. Verdict, Ex. 3, at 1; Judgment, Ex. 4, at 1.

66.    Count Nine of the Superseding Indictment charged Langford with money laundering in connection with paying $29,241 of personal taxes on August 14, 2004 with the $30,000 payment from Blount. Superseding Indictment, Ex. 2, at 28.

67.    The jury found Langford guilty of Count Nine, and the Court

adjudicated him guilty. Verdict, Ex. 3, at 1; Judgment, Ex. 4, at 1.

68. Counts 64 through 68 of the Superseding Indictment charged Langford with mail fraud in connection with soliciting payments from July 2002 through May 2007 from Blount in return for using his position as County Commission President to award Blount and Blount Parrish business. Superseding Indictment, Ex. 2, at 35-38.

69. The jury found Langford guilty of Counts 64 through 68, and the Court adjudicated him guilty of those counts. Verdict, Ex. 3, at 3; Judgment, Ex. 4, at 1.


July 16, 2010                                             Respectfully submitted,

                                                          s/Robert K. Levenson
                                                          Robert K. Levenson
                                                          Florida Bar No. 0089771
                                                          Regional Trial Counsel
                                                          U.S. Securities and Exchange Commission
                                                          801 Brickell Avenue, Suite 1800
                                                          Miami, Florida 33131
                                                          (305) 982-6341 (direct dial)
                                                          (305) 536-4154 (facsimile)
                                                          levensonr@sec.gov
                                                          Appearing pursuant to Local Rule 83.1(c)

# **CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas E. Baddley, Esq.
Baddley & Mauro, LLC
2545 Highland Avenue South
Suite 100
Birmingham, AL 35205
Telephone:  (205) 939-0090
Facsimile:  (205) 939-0064
*Counsel for Larry P. Langford*

Andrew P. Campbell, Esq.
Caroline S. Gidiere, Esq.
Campbell, Gidiere, Lee, Sinclair and Williams
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
Telephone:  (205) 803-0051
Facsimile:  (205) 803-0053
*Counsel for William B. Blount and*
*Blount Parrish & Co., Inc.*

Joseph A. Fawal, Esq.
Fawal & Spina
1330 21st Way S., Suite 200
Birmingham, AL 35205
Telephone:  (205) 939-0590
Facsimile:  (205) 933-0101
*Counsel for Albert W. LaPierre*