# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **SECURITIES & EXCHANGE COMMISSION,** ) ) ) | |
| Plaintiff, ) ) | |
| ) | Civil Action Number |
| v. ) | **2:08-cv-761-AKK** |
| ) | |
| **LARRY P. LANGFORD,** ) ) | |
| Defendant. ) ) | |

## MEMORANDUM OPINION AND ORDER

The court has before it the Securities & Exchange Commission's ("SEC") Renewed Motion for Summary Judgment, in which the SEC argues that it is due to prevail on Counts I - III of the Complaint on collateral estoppel grounds because the facts and legal issues in this litigation are identical to those in the criminal case in which then Mayor Larry Langford ("Langford") was convicted. Docs. 54 and 59; *see also* Case No. 7:08-cv-245-LSC-PWG ("criminal case"). The court has before it also the SEC's request that the court permanently enjoin Langford from violating the securities laws. Doc. 54 at 17. Although the SEC filed its motion initially back on July 16, 2010, at Langford's request, doc. 56, the court delayed ruling to give Langford an opportunity to exhaust the appeal of his criminal

conviction.[1]  Doc. 58 at 2.   The Eleventh Circuit Court of Appeals affirmed the conviction on August 5, 2011. *United States v. Langford*, No. 10-11076 (11th Cir. filed Aug. 5, 2011), and, consistent with the court's instructions, the SEC has now renewed its motion.  Therefore, this matter is now ripe for adjudication.  For reasons stated fully below, the SEC's motion for summary judgment is **GRANTED**, and Langford is **PERMANENTLY ENJOINED** from violating the securities laws.

## I.  LEGAL STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotations omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[1] In light of the appeal, the SEC requested that this court leave open the issues of disgorgement and civil penalties, doc. 54 at 20, and Langford agreed, doc. 56 at 2. **The SEC's motion, if any, on this issue is due on August 15, 2011.**

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

As it relates to the collateral estoppel doctrine the SEC is invoking, the doctrine prevents a party from re-litigating issues of fact and law when the party received a full and fair opportunity to litigate those same issues of fact and law in a previous action. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329-33. (1979). To invoke the doctrine, a party must show that: (1) "The issue at stake must be identical to the one involved in the prior litigation;" (2) "the issue must have been actually litigated in the prior suit;" (3) "the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and" (4) "the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *Refined Sugars v. S. Commodity Corp.*, 709 F. Supp. 1117, 1121 (S.D. Fla. 1988) (citation omitted).

Collateral estoppel applies to issues previously litigated in both civil and criminal matters. In fact, "[u]se of a criminal conviction [for collateral estoppel] is well justified because of the higher standard of proof and greater procedural protections attaching to a defendant in a criminal prosecution . . . [and] a criminal

conviction possesses substantial indicia of trustworthiness and is a sufficiently reliable determination of the relevant issues." *Refined Sugars*, 709 F. Supp. at 1120 (citing *Matter of Raiford v. Abney*, 695 F.2d 521, 523 (11th Cir. 1983). Because criminal cases require a higher burden, a criminal conviction based upon a jury verdict is sufficient for collateral estoppel in civil matters. *SEC v. Bilzerian*, 29 F.3d 689 (D.C. Cir. 1994) (upholding summary judgment on basis of collateral estoppel against defendant in SEC civil action based on jury verdict against him in criminal trial for same violations); *see also Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38 (2d Cir. 1986) (plaintiff collaterally estopped from re-litigating to seek insurance coverage in civil suit when a jury had previously convicted him of mail fraud based on his submission of fraudulent proof-of-loss statements on the policy).

## II.  FACTS

The complaint alleges that Langford, while President of the Jefferson County Commission ("County Commission"), directed the County's bond business to William B. Blount ("Blount") and his firm, Blount Parrish & Co. ("Blount Parrish"), in return for over $156,000 in cash and benefits. Doc. 1 ¶ 2. Blount and Langford used Albert W. LaPierre ("LaPierre") as a conduit to funnel the funds to Langford. *Id.* In return for Blount's payments, Langford involved

Blount Parrish in every County bond agreement between March 2003 and December 2004 – directing more than $6.7 million in fees to Blount Parrish. *Id.* at ¶ 3. Langford failed to disclose these payments and perks to the County, its citizens, or bond investors. *Id.* ¶ 4.

In the criminal case, Count One of the Superseding Indictment charged Langford with bribery, based on a $69,000 check he received from Blount in June 2003, for agreeing to award Blount and Blount Parrish County bond business. Criminal Case, doc. 10 at 4. The jury found Langford guilty of Count One, and the court adjudicated him guilty. Criminal Case, doc. 173.

Count Four of the Superseding Indictment charged Langford with money laundering for paying for clothing items using a $12,000 cashiers check purchased at Compass Bank with funds paid to him as a bribe. Criminal Case, doc. 10 at 7. The jury found Langford guilty of Count Four, and the court adjudicated him guilty. Criminal Case, doc. 173.

Count Six of the Superseding Indictment charged Langford with conspiracy to commit bribery, mail fraud, and wire fraud. Criminal Case, doc. 10 at 8-9. The government alleged that Langford used his position as County Commission President to award County business to Blount and Blount Parrish, and Blount Parrish in turn awarded business to LaPierre, in exchange for Blount and LaPierre

giving money and other financial benefits to Langford.  *Id.*  The overt acts in furtherance of the conspiracy included:  (1) Blount helping Langford obtain a $50,000 unsecured loan from Colonial Bank in July 2002; (2) LaPierre obtaining a $50,000 loan from Colonial Bank, which he used to pay off Langford's past-due note; (3) Langford directing the County to select Blount Parrish as an underwriter on the 2003-A bonds; (4) Langford having the County select Blount Parrish as a remarketing agent and consultant to Goldman Sachs on the 2003-B bonds; (5) the County paying Blount Parrish $500,000 for remarketing the 2003-B bonds; (6) Blount providing a $50,000 check to LaPierre on May 28, 2003, and another $30,000 check to pay off LaPierre's Colonial Bank loan; (7) Blount writing a $69,000 check to LaPierre on June 12, 2003, and LaPierre writing a $69,000 check to Langford on June 16, 2003; (8) Langford directing the County to select JP Morgan as underwriter on the 2003-C transaction, and Blount Parrish receiving $2.6 million from JP Morgan for that transaction; (9) Langford directing the County to select Blount Parrish as underwriter on the 2004-A bonds; (10) Blount writing a $30,000 check to LaPierre on August 11, 2004, and in turn, LaPierre using those funds to write Langford a $30,000 check on August 12, 2004, with Langford using those funds to pay $29,241 in personal taxes; (11) the County paying Blount Parrish $31,350 for its work on the 2004-A bonds; and (12)

Langford directing the County to select Blount Parrish as underwriter for the 2004 school bonds, which netted Blount Parrish a $445,000 payment from the County. *Id.* at 11-22. The jury found Langford guilty of Count Six, and the court adjudicated him guilty. Criminal Case, doc. 173.

Count Seven of the Superseding Indictment charged Langford with bribery for accepting the $30,000 check from Blount and LaPierre on August 12, 2004, in connection with the award of County bond business. Criminal Case, doc. 10 at 26. The jury found Langford guilty of Count Seven, and the court so adjudicated him. Criminal Case, doc. 173.

Count Nine of the Superseding Indictment charged Langford with money laundering, in connection with Langford paying $29,241 in personal taxes with $30,000 he received from Blount and LaPierre. Criminal Case, doc. 10 at 28. The jury found Langford guilty of Count Nine, and the court so adjudicated him. Criminal Case, doc. 173.

Counts Sixty-four through Sixty-eight of the Superseding Indictment charged Langford with mail fraud in connection with his soliciting and receiving financial payments and benefits from Blount and Blount Parrish in return for Langford directing County business to Blount and Blount Parrish. Criminal Case,

doc. 10 at 35-36.  The jury found Langford guilty of Counts Sixty-four through Sixty-eight, and the court so adjudicated him.  Criminal Case, doc. 173.

### III.  LEGAL ANALYSIS

Based on the jury conviction in the criminal case, the SEC contends that it is due summary judgment on collateral estoppel grounds because the factual and legal issues here are identical to those in the criminal proceeding.  Because the collateral estoppel doctrine prohibits parties from relitigating issues litigated in an earlier proceeding, the court **GRANTS** the SEC's motion.

**A.     The issues here are identical to those in Langford's criminal trial.**

To invoke the collateral estoppel doctrine, again, the SEC must show that (1) the facts and legal issues are identical to those in the criminal matter, (2) Langford litigated these issues in the criminal matter, (3) the determination of these issues were critical and necessary in the criminal matter, and (4) Langford had a full and fair opportunity to litigate these issue in the criminal matter.  *See Refined Sugars*, 709 F. Supp. at 1121.  For the reasons stated below, because the factual and legal issues presented in Langford's criminal trial and this action are virtually the same, the court finds that the SEC can invoke the collateral estoppel doctrine to prevent Langford from re-litigating the same issues from his criminal trial in this action.

    *1.*  *The facts are identical.*

  A review of the SEC Complaint and criminal charges against Langford shows that the allegations in both are based on the same set of operative facts, namely, that Langford accepted $156,000 worth of bribes in the form of monetary payments and benefits from Blount and LaPierre, in exchange for using his then position as County Commission President to direct County bond business to Blount Parrish. Langford failed to disclose any of these payments or benefits to the County, its citizens or bond investors. The series of bribes and subsequent bond agreements form the basis of both the SEC's complaint and the Superseding Indictment. *See* Doc. 1; Criminal Case, doc. 10. Accordingly, this court finds that the facts giving rise to these two matters are identical.

    *2.*  *The legal issues are identical.*

  In addition to the identical facts, the legal issues also mirror each other. For example, the Complaint here alleges that Langford violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5. Doc. 1 at 33-35. To prove a violation of these provisions, the SEC must show that Langford (1) made material misrepresentations or omissions; (2) with scienter;[2]

---

[2] Scienter is not required for violations of Section 17(a)(2) and (3) of the Securities Act. *See* 15 U.S.C. § 77(q)(2), (3).

(3) in the offer and sale of a security or in connection with the purchase and sale of a security; and (4) use of interstate commerce, the mails, or a national securities exchange.[3]  *See* 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b); 17 C.F.R.  § 240.10b-5; *see also SEC v. Unique Fin. Concepts, Inc.*, 119 F. Supp. 2d 1332, 1339 (S.D. Fla. 1998).  As shown below, these are essentially the same elements the jury in the criminal action had to evaluate in ascertaining whether the government proved its case beyond a reasonable doubt to convict Langford of the charges against him in the Superseding Indictment.  Criminal case, doc. 172.

*a. Material misrepresentation or omissions*

First, the SEC must prove that Langford made a material misrepresentation or omission or engaged in a fraudulent scheme.  15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b).  Langford's conviction of Count Six – conspiracy – in the criminal case establishes this element because the conspiracy conviction the jury to find that Langford engaged in a "scheme to defraud" which requires "proof of a misrepresentation, omission or concealment of a material fact."  Criminal Case, Doc. 172 at 21, 23.  Judge Coogler charged the jury that a fact is "material" if it "would be important to a reasonable person in deciding whether to engage or not

---

[3] Because the concept of interstate commerce is given broad interpretation in the application of federal securities laws, and because the securities transactions involved in the SEC's Complaint clearly involved interstate commerce (i.e., the County conducted bond agreements with out-of-state financial institutions), the court finds that the SEC can establish this requirement.

to engage in a particular transaction" and "if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to whom or to which it is addressed." *Id.* at 23. The civil definition is similar – "whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1323 (11th Cir. 1982) (citations omitted). Because the criminal jury has already determined that Langford engaged in a fraudulent scheme and thus misrepresented or omitted material facts – based on the same events giving rise to the SEC's complaint – Langford is estopped from contesting the first element of the SEC's allegations.

### b. Scienter

Langford's criminal conviction also establishes the second element the SEC must establish – i.e., scienter. Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (citation omitted). To convict Langford of bribery (Counts One, Seven, and Ten through Thirty-six), the jury had to find that he acted "corruptly," that is, "voluntarily, deliberately and dishonestly for the purpose of [ ] accomplishing . . . an unlawful end," and in committing conspiracy, he acted "willfully," i.e., "voluntarily and purposely, with the specific intent to do

something the law forbids." Criminal Case, doc. 172 at 13, 14. The court finds that because the jury convicted Langford of conspiracy and bribery, it is sufficiently established that he acted with the requisite scienter to establish violation of the securities provisions alleged in the SEC's Complaint.

### c. In connection with the purchase and sale of a security

Finally, as for the third element, the criminal conviction also establishes the "in connection with" requirement for this action. To find Langford guilty of the Counts One, Seven, and Ten through Thirty-six of the Superseding Indictment, the jury had to find that Langford solicited, demanded or accepted financial benefits *in connection with* the County financial transactions. *Id.* at 11-13 (emphasis added). Federal courts have interpreted the "in connection with" requirement broadly, (*SEC v. Zandford*, 535 U.S. 813, 819-20 (2002)), particularly when the SEC is the plaintiff, (*SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1983) (in SEC actions, the meaning of the "in connection with" requirement "remains as broad and flexible as is necessary to accomplish the statute's purpose of protecting investors.")). Because the criminal trial jury found that Langford received financial benefits in connection with the County financial transactions, this court finds that the SEC has conclusively established the "in connection with" element in this case.

Accordingly, the court finds that the SEC has met its burden of establishing that the factual and legal issues here are identical to those in Langford's criminal trial. Therefore, the court turns now to the remaining elements necessary for collateral estoppel.

**B.      The issues were actually litigated in the previous action.**

As discussed in section A, *supra*, the facts involved and elements necessary to prove Langford's guilt in the criminal case and the elements of the SEC's allegations against him are identical. The record of the criminal trial establishes that Langford fully and vigorously defended himself in the previous action, including at the appellate level. Moreover, courts have allowed criminal convictions based upon guilty pleas to serve as a basis for collateral estoppel in subsequent civil actions. *See Refined Sugars*, 709 F. Supp. 1117, 1120 ("a judgment based on a guilty plea is given the same collateral effect as any other criminal conviction, conclusive of all issues that would have been resolved by a conviction following a contested jury trial.") (citations omitted). Given that courts deem that a defendant who pleads guilty has "actually litigated" issues for collateral estoppel purposes, it follows that issues determined in a conviction resulting from a jury trial are also "actually litigated." Indeed, it would defy logic

to find otherwise.  As such, the court finds that Langford litigated these issues in the criminal case.

    **C.**    **The facts and issues were a necessary part of Langford's criminal conviction.**

As discussed in section A, *supra*, the facts giving rise to both the charges in the Superseding Indictment and the SEC's Complaint are the same, namely, that Langford accepted over $156,000 in financial benefits from Blount and LaPierre in exchange for using his position as President of the County Commission to award County bond business to Blount's firm, Blount Parrish.  Also, as discussed *supra*, all of the elements necessary to prove the SEC's allegations were conclusively established by the jury's verdict in the criminal trial.  Moreover, each of those corresponding elements were necessary for the jury's verdict.  For example, the jury was required to find that Langford engaged in a "scheme to defraud" (which required proof of a misrepresentation or omission of a material fact – the first element of the alleged violations in this action) to find him guilty of conspiracy.  Criminal Case, doc. 172 at 20-23.  The jury necessarily had to find that Langford acted corruptly to convict him of Counts One, Seven, and Ten through Thirty-six, and that he acted willfully to convict him of conspiracy.  *Id.* at 13, 14.  As discussed in section A(2)( b), *supra*, the definitions of these terms match, or even impose a higher standard, than the definition of scienter, an

element necessary to prove violation of the securities laws.  Finally, to convict Langford of bribery, the jury necessarily had to find that the financial benefits he received were connected with the County financial transactions, which matches the "in connection with" element of the securities laws *Id.* at 11-13.  Therefore, the court finds that the SEC can establish that the determination of these issues in the criminal case were a critical and necessary part of the guilty verdict rendered against Langford.

>   **D.    Langford was afforded a full and fair opportunity to litigate the facts and issues in the criminal proceeding.**

As discussed in section B, *supra*, in the criminal matter, Langford litigated the facts and issues common to the SEC's complaint.  A jury convicted him following an eight-day trial, in which he was ably represented by counsel.  He received a full and fair opportunity to defend against the charges, including on appeal.

Having already litigated these issues, the court finds that Langford is collaterally estopped from re-litigating those same facts and issues in this action. *See Parklane Hosiery*, 439 U.S. at 329-33.  Accordingly, the SEC's motion for summary judgment on Counts I - III of the complaint based on the doctrine of collateral estoppel is **GRANTED**.

## IV.  PERMANENT INJUNCTION

The SEC seeks a permanent injunction against Langford to prevent him from future violations of the securities laws.  "The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004) (citations omitted).  "Indicia that a wrong will be repeated include the 'egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.'" *Id.* (quoting *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982)).  This court has already determined that Langford has violated the securities laws and now also finds that Langford is likely to repeat his wrongs if given the opportunity.

First, Langford's conduct was egregious.  He engaged in a scheme spanning several years in which he abused his position as a public servant to enrich himself and his friends, and as a result of his wrongful acts, the County citizens and its bond investors continue to suffer.  His conduct was also recurrent – he accepted

bribes from Blount and LaPierre on multiple occasions and in return awarded Blount's firm business on multiple County bond transactions.  Langford displayed the requisite scienter – he flagrantly disregarded his "fiduciary duty to the public to make governmental decisions in the public's best interest," and instead defrauded the public by "secretly mak[ing] his decision based on his own personal interests," i.e., awarding the County financial business based on bribes.  *U.S. v. deVegter*, 198 F.3d 1324, 1328 (11th Cir. 1999).   Despite the jury's "guilty" verdict on all counts brought against him, Langford refuses to admit that he engaged in wrongful conduct, as evidenced by his appeal and his motion to dismiss filed in this action.  Finally, although Langford is currently serving a prison sentence for his crimes and thus not able to re-offend in the near future, this court finds that the egregiousness and repetitive nature of Langford's conduct justifies the injunction.  *See SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975) ("the commission of past illegal conduct is highly suggestive of the likelihood of future violations," and "cessation of illegal activity does not ipso facto justify the denial of an injunction.") (internal citations omitted).  Accordingly, Langford is **PERMANENTLY ENJOINED** from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and

Exchange Act Rule 10b-5.

Done the 8th day of August, 2011.

                                             **ABDUL K. KALLON**
                                     UNITED STATES DISTRICT JUDGE